FEDERAL COAL CO. *v.* UNITED STATES FUEL CORPORATION.

(*Nashville.* December Term, 1922.)

1. **COURTS.** Whether nonpayment of privilege tax prevents recovery on contracts can be reviewed by Supreme Court.

   Where the controlling issue in an action for breach of contracts was whether the nonpayment of the privilege tax by plaintiff corporation prevented its enforcement of the contracts, the case can be reviewed by the supreme court as one involving a revenue statute, which may be said to involve the state revenue. (*Post, pp.* 213-215.)

   Acts cited and construed: Acts 1919, ch. 134, secs. 4, 16.

2. **LICENSES.** State privilege tax does not apply to business done outside of the state.

   The privilege tax exacted of coal dealers by Acts 1919 chapter 134, sections 4, 16, was not intended to levy a tax on business done out of the State, if the legislature had power to make such levy, and therefore does not apply to a contract for the delivery of coal mined in Kentucky to points in Kentucky, though such contracts did not relate to interstate commerce. (*Post, p.* 215.)

   Case cited and approved: Lumber Co. v. Moore, 126 Tenn., 313.

3. **COMMERCE.** Contracts for coal to be loaded in another State and shipped to a third State form interstate commerce.

   Contracts made within the State for the sale of coal, which were breached by the omission of the seller to load at its mines in Kentucky cars of coal to be shipped to States other than Kentucky, related strictly to interstate commerce. (*Post, p.* 215.)

   Cases cited and approved: Dahnke-Walker Milling Co. v. Bondurant, 257 U. S., 282; Lemke v. Farmers' Grain Co., 258 U. S., 50.

4. **COMMERCE.** State cannot tax formation of contracts by residents for interstate commerce.

Federal Coal Co. v. U. S. Fuel Corp.

The State cannot impose a privilege tax on the negotiation within the State of contracts between corporations conducting their entire business within the State, for the sale and delivery of goods in interstate commerce.   (*Post, p.* 216.)

Cases cited and approved: Heyman v. Hays, 236 U. S., 178; Logan v. Brown, 125 Tenn., 209.

### FROM HAMILTON.

Error to the Circuit Court of Hamilton County.—HON. OSCAR YARNELL, Judge.

LUSK & THOMPSON, for plaintiff in error.

SIZER, CHAMBLISS & CHAMBLISS, for defendant in error.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover damages for alleged breaches of two contracts to deliver coal.   There was a directed verdict for the defendant, from which the plaintiff below appealed in error.   There is some doubt as to whether this court has jurisdiction of this appeal in error.   We have decided to entertain the appeal in error, inasmuch as the case involves a revenue statute and may be said to involve state revenue.

The plaintiff in error, the Federal Coal Company, is a corporation chartered under the laws of the state of Delaware, and has its principal office in Chattanooga, Tenn.. The defendant in error, the United States Fuel Corpora-

tion, has an office also in Chattanooga, Tenn.   The contracts were made in Chattanooga.

The contracts were entered into between the parties in 1919.   Under the first of these contracts defendant in error agreed to deliver to the plaintiff in error, "f. o. b. mines," one hundred tons of "Horse Creek" coal at $3 per ton.   Under the second contract defendant in error agreed to deliver to the plaintiff in error twenty cars of "Harlan county round coal."   Two cars only were delivered under the first contract, and two cars only under the second contract.   It is for the failure to deliver other coal under these contracts that this suit was brought.

Quite a number of pleadings were filed by the above parties and amendments made.   It is not necessary to go into these details.

The issue finally presented, and upon which the trial judge dismissed the suit, was the right of the plaintiff in error to recover, when it had not paid the privilege tax exacted of coal dealers by the Acts 1919, chapter 134, section 4, p. 454, and section 16, p. 489.   There is no question about the liability of the plaintiff in error for this tax. That is conceded, and the tax has now been paid.   The question is whether plaintiff in error was entitled to maintain suit upon these particular contracts, made when it was in default as to said privilege tax.

Proof tends to show that the Horse Creek coal and the Harlan county round coal are both mined in the State of Kentucky, and that under the arrangement between the parties this coal was to be delivered to plaintiff in error on the cars at the mines, to be shipped to points in Kentucky, Tennessee, Georgia, and other States on the order of the plaintiff in error.   The proof further shows that it

was later agreed between the parties that none of these cars would be ordered to points within the State of Kentucky on account of the freight rates, but all of them would be ordered to points out of the State of Kentucky.

The plaintiff in error contends that the subject of the contracts here involved was interstate commerce, and that its rights respecting such contracts were not affected by its default with respect to the Tennessee privilege tax laid upon coal dealers. We think this contention is sound.

If it be said that the original contracts between the parties were not, strictly speaking, interstate in character, because it was contemplated that some of the coal would be shipped to parties within the State of Kentucky, where it was mined, nevertheless the result is not different. It was not the purpose of the Revenue Act to levy a tax upon business done out of the State, if, indeed, the legislature had any such power. A foreign corporation, that maintains an office in Tennessee merely for the transaction of business in other States, is not doing business in Tennessee, and is not required to comply with our laws respecting foreign corporations. *Lumber Co.* v. *Moore,* 126 Tenn., 313, 148 S. W., 212. So it was not intended by our lawmakers to make a privilege of executing contracts here with respect to business in Kentucky.

The derelictions of which the plaintiff in error really complains, however, were the omissions of the defendant in error to load cars to be shipped on the orders of the plaintiff in error to parties in States other than Kentucky— strictly interstate commerce. *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S., 282, 42 Sup. Ct., 106, 66 L. Ed., 114; *Lemke* v. *Farmers' Grain Co.,* 258 U. S., 50, 42 Sup. Ct., 244, 66 L. Ed., 273.

Defendant in error presents the case as though the failure of the plaintiff in error to pay its privilege tax deprived it of the right to recover on its contracts negotiated in Tennessee, regardless of the subject-matter of such contracts. We do not think this is true.

Although plaintiff in error had its principal office in Tennessee, with all its organization, and was here doing business, still, if all this business had been interstate in character, the plaintiff in error would not have been liable to any privilege tax. *Heyman* v. *Hays,* 236 U. S., 178, 35 Sup. Ct., 403, 59 L. Ed., 527. This decision virtually destroyed our case of *Logan* v. *Brown,* 125 Tenn., 209, 141 S. W., 751, referred to by counsel.

Inasmuch, therefore, as the State of Tennessee cannot burden interstate business, even though one conducting it be located within the borders of this State with all his outfit, it necessarily follows that a contract respecting such business is beyond the reach of our revenue laws. A contract involving such transactions is not made in violation of the laws of this State, because our laws cannot extend so far. The privilege tax is laid upon business within the State, and only unlicensed intrastate business is unlawful.

Without further elaboration, and for the reasons stated, the judgment of the trial court will be reversed, and this case will be remanded for trial.